# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI ST. JOSEPH DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY 1,201,127.55191 USDT

Defendant.

Civil No.

## COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, by its attorneys, R. Matthew Price, United States Attorney for the Western District of Missouri, and John Constance, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is an action to forfeit property to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) based on violations of 18 U.S.C. §§ 1956 and 1343.

## THE DEFENDANT IN REM

2. The defendant property consists of approximately 1,201,127.55191 Tether (USDT) stablecoin (the "Defendant Property") seized on or about June 23, 2025, from address ending in -BJHX stored at premises controlled by Tether Limited (the "Defendant Address"). Tether Limited completed the transfer of the contents of the Defendant Address to the FBI on or about September 9, 2025. The Defendant

Property is presently in the custody of the Federal Bureau of Investigation (FBI), Kansas City, Field Office.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. § 981(a).

4. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district; and pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the Defendant Property was brought into this district following seizure outside of the United States.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district; and pursuant to 28 U.S.C. § 1395, because the Defendant Property was brought into this district following seizure outside of the United States.

## BASIS FOR FORFEITURE

6. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C), because it constitutes, is derived from, or is traceable to proceeds of wire fraud, a "specified unlawful activity," as that term is defined in 18 U.S.C. § 1956(c)(7). The Defendant Property also is subject to forfeiture pursuant to

2

18 U.S.C. § 981(a)(1)(A) as property involved in money laundering, in violation of 18 U.S.C. § 1956.

**FACTUAL ALLEGATIONS**

7.    The perpetrators of a global fraud scheme have victimized numerous individuals residing throughout the United States, including at least one person from the Western District of Missouri, through the fictious investment platforms TMGM and NEEX. The perpetrators located victims via unsolicited text and social media messages, often claiming to have been trying to reach someone else (a "sorry, wrong number" pitch).

8.    After building a positive rapport, the perpetrators introduced the victims to investment opportunities that they promised would provide huge returns. Once the victim expressed interest, they were provided an internet link directing them to what appeared to be a legitimate online trading platform operated by TMGM or NEEX. After the victim made an initial investment using cryptocurrency, their account balance appeared to grow rapidly, often exponentially. In reality, the victim did not have an investment account, and their funds had been transferred to cryptocurrency addresses controlled by the perpetrators.

**I.    Victim losses to TMGM and NEEX cryptocurrency investment scams**

**a.    Victim 1**

9.    An individual identifying themselves as "Yuxi Li" contacted Victim 1 in January 2025 via text message. Victim 1 resided in the Western District of Missouri. Li initially claimed she had texted a wrong number but eventually promoted an

3

investment opportunity in the international gold market. Yuxi Li convinced Victim 1 to deposit $825,000 into a Coinbase cryptocurrency exchange account, which would supposedly be invested into a gold market investment platform operated by "TMGM LLC."

10. Soon after making his/her initial investment, Victim 1's investments appeared through the TMGM platform to be rapidly increasing in value. But when Victim 1 attempted to withdraw funds, Li told Victim 1 he/she would first have to pay taxes on the income. The perpetrators have not since returned Victim 1 any of his/her investment funds.

**b.** **Victim 2**

11. In December 2024, Victim 2 received a message on Instagram from a woman named Alice Zhang, who claimed to be a financial advisor. Zhang persuaded Victim 2 to invest in the international gold market through the trading website, tmgmllcmax.com. Victim 2 initially invested $9,700 through Coinbase cryptocurrency deposits. Over the next few days, the TMGM trading platform website showed that Victim 2's initial "investment" had already increased by nearly $2,000. Victim 2 sought to withdraw the funds to prove to him/herself that the investment was not a scam. He/she received an investment withdraw of approximately $11,519.88 worth of Ethereum cryptocurrency.

12. Convinced the investment was legitimate, Victim 2 proceeded to transfer an additional approximately $77,400 in cryptocurrency to the trading website. Yet when Victim 2 later attempted to withdraw his/her profit on the

succeeding investment, he/she was told they had to pay a 30% tax. When Victim 2 refused to pay, he/she was told they would be reported to the Hong Kong Financial Authorities. Victim 2 realized at that point that he/she was being scammed.

### c.    Victim 3

13.    Victim 3 received a wrong number text in October 2024 from an individual named Alice Zhang, and the two began a conversation. Zhang told Victim 3 that she was involved in the finance industry; specifically, gold futures trading. Zhang told Victim 3 that if he/she were interested in investing, he/she would need to open a Coinbase account to invest with the trading company TMGM LLC.

14.    Victim 3 initially invested $2,000.00. The TMGM website showed Victim 3 that his/her investment was earning a significant profit. Once the investment appeared to have reached $21,000, Victim 3 successfully withdrew the entire balance. Because Victim 3 was able to successfully retrieve his/her profits, he/she believed the investment to be legitimate.

15.    Victim 3 invested more funds through the website tmgmllc.com. When the TMGM investment platform indicated he/she had made approximately $2 million dollars, Victim 3 tried to withdraw some of his/her profits. Victim 3 was told that to receive his/her profits, $200,000 in taxes would need to be paid. Victim 3 paid the $200,000 in taxes. After paying the $200,000, Victim 3 was told that he/she would now have to pay a $200,000 penalty. This is when Victim 3 realized they had been defrauded. Victim 3 lost approximately $126,347 traceable to the Defendant Address.

### d. Victim 4

16. Victim 4 received a wrong number text in March 2025 from an individual named Ella. Ella told Victim 4 about cryptocurrency trading website called NEEX and instructed him/her how to deposit into the platform using Coinbase cryptocurrency transfers. Victim 4 transferred $140,000 from his/her bank accounts to Coinbase for investment with NEEX. A NEEX website link provided to Victim 4 by Ellea appeared to show Victim 4's investment rapidly increasing in value. But when Victim 4 attempted to withdraw $400,000 in gains from his/her account, he/she was told that he/she would have to pay $80,000 in taxes. After multiple additional unsuccessful withdrawal attempts, Victim 4 abandoned her/his effort to get back the money he/she had lost.

## II. Tracing Victim funds through Defendant Address

17. The first recorded activity for the Defendant Address was on June 19, 2024. Between June 2024 and May 2025, the address received 8,658,468.55191 USDT within 77 inbound transfers and sent 7,457,341 USDT through 30 outbound transfers.

### a. Victim 1 funds

18. Between January 23, 2025, and February 10, 2025, at the direction of "Yuxi Li," Victim 1 made three cryptocurrency transfers to the address ending in -C647 in the amounts of 249,990 USDC ($249,990), 329,990 USDC ($329,990), and 45,017.56 USDC ($45,017.56).

19. The 624,997.57 USDC deposited by Victim 1 through these three transactions was moved by the perpetrators in a single transaction on March 12, 2025, to address ending in -fc59. Over the next three minutes the perpetrators conducted multiple cross-chain swaps of Victim 1's funds in the -fc59 address.

20. First, the approximately 624,997 USDC was moved from the Base blockchain to the Tron blockchain and converted to 623,068.923077 USDT ($623,068.92) at the address ending in -RJfG. Next, the 623,068.92 USDT ($623,068.920) was transferred less than two minutes later to the Defendant Address.

21. Victim 1's funds were transferred out of the Defendant Address through two transactions on March 21, 2025, and April 06, 2025, in the amounts of 500,000 USDT ($500,000) and 221,657 USDT ($221,657), respectively.

**b.      Victim 2**

22. Between February 11, 2025, and March 27, 2025, Victim 2 conducted four transactions to the address ending in -4Fa2, in the amounts of 9,700.514 USDC ($9,700.51); 29,990 USDC ($29,990); 11,990 USDC ($11,990); and 35,420 USDC ($35,420). The sum of these four deposits by Victim 2 was 87,100.514 USDC.

23. On April 28, 2025, all of Victim 2's funds (87,100.514 USDC) were moved from address -4Fa2 to address ending in -d580.

24. As with Victim 1's stolen funds, nearly immediately after the transfer into -d580, Victim 2's USDC funds were sent through a cross-chain swap and

7

converted to USDT. One minute later, the USDT was moved from -d580 into the address ending in -ywwU.

25. Three minutes after that, 86,838.968217 USDT was transferred from -ywwU to the Defendant Address. The approximately 86,836 USDT directly traceable to Victim 2 remained in the Defendant Address wallet as of the date Tether froze the funds.

**c.  Victims 3 and 4**

26. A blockchain analysis of Victim 3 and 4's funds reflects the same pattern of cryptocurrency movement as Victims 1 and 2. After Victims 3 and 4 "invested" funds through Coinbase accounts into TMGM LLC and NEEX, respectively, the perpetrators of the fraud scheme converted the funds into USDT using cross-chain swaps, and eventually moved the funds into the Defendant Address. Most of Victim 3's funds remained in the Defendant Address at the time Tether froze the funds (75,494.683013 USDT).

27. All funds deposited by Victim 4 (142,338.444689 USDT) remained within the Defendant Address wallet as of the date Tether froze the funds.

<u>**CLAIMS FOR RELIEF**</u>

<u>**FIRST CLAIM FOR RELIEF**</u>

28. The Plaintiff repeats and incorporates by reference the paragraphs above.

8

29. By the foregoing and other acts, the Defendant Property, constitutes, or was derived from, proceeds traceable to wire fraud (18 U.S.C. § 1343), and therefore, is forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

30. The Plaintiff repeats and incorporates by reference paragraphs 1 through 27 above.

31. By the foregoing and other acts, the Defendant Property constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or is traceable to such property, and therefore, is forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE the United States prays that the defendant property be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

**R. MATTHEW PRICE**
United States Attorney

By: */s/ John Constance*
John Constance
Assistant United States Attorney
400 E. 9th Street, Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122
E-mail: John.Constance@usdoj.gov

9

<u>**VERIFICATION**</u>

I, Special Agent Melanie Wascom, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Federal Bureau of Investigation, that I have read the foregoing Verified Complaint <u>in</u> <u>Rem</u> and know the contents thereof, and that the factual matters contained in paragraphs 7 through 27 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>12/19/25</u>                                /s/ Melanie Wascom
                                                     Melanie Wascom
                                                     Special Agent
                                                     Federal Bureau of Investigation